May it please the Court, Fred Rowley, Jr., for the Government. The District Court suppressed evidence found after Federal agents arrested the defendant for participating in a stolen Treasury check transaction. The Court concluded that the agents lacked probable cause to believe the defendant was involved in the transaction, and the Government maintains that was error. Now it was undisputed below that the agents had probable cause to believe that some criminal activity was taking place. The agents were listening in over a wire as a man named Michael Pass provided $140,000 in stolen Treasury checks to a confidential informant. And in fact, the agents – JUSTICE SCALIA How do you tie Collins to that person? MR. COLLINS To Michael Pass, Your Honor? JUSTICE SCALIA Yeah. MR. COLLINS Well, you have to look at the facts taken as a whole, and the undisputed  JUSTICE SCALIA How do you tie the two together? MR. COLLINS Your Honor – JUSTICE SCALIA I'm talking about the guy that actually physically took custody of the Treasury checks from the vehicles to the office, right? MR. COLLINS Your Honor, that's a – that's Mr. Flores. JUSTICE SCALIA Yeah. MR. COLLINS Yes, Your Honor. How do you tie them all together? JUSTICE SCALIA Yeah. MR. COLLINS Your Honor, I – JUSTICE SCALIA How do you tie this defendant? We're dealing with Collins here. MR. COLLINS Yes, Your Honor. JUSTICE SCALIA What did Collins do? MR. COLLINS Your Honor, the defendant did a few things. First of all, he arrived at the time and place, the precise time and place, where Michael Pass was taking delivery of stolen Treasury checks. JUSTICE SCALIA Is that sufficient for probable cause? MR. COLLINS Your Honor, I think that the facts taken individually or not, but as a whole, they are. And the undisputed facts are these. It is important to note that the agents had reason to believe that other conspirators were coming to deliver stolen Treasury checks to Michael Pass. And they had reason to believe that for a few reasons. First, in the – JUSTICE SCALIA Did they identify Collins as one of those people? MR. COLLINS They did not, Your Honor. JUSTICE SCALIA Okay. MR. COLLINS They did not. But they did have reason to think that there might be more than one source. In the meetings leading up to this final transaction, Pass had adverted to the fact that he did have multiple sources. I believe he said he had three sources. The afternoon before the transaction, he said that one or more of his – I believe the word in the affidavit is K'nex – might show up to the transaction. And then during the transaction itself, Pass says, my guys are coming with the 400. At that point, he goes downstairs and is waiting in his car when the defendant drives up in the Cadillac, and then another car pulls up on the other side of the Land Rover, where Pass is waiting for the delivery of stolen Treasury checks. At that point, the defendant gets out of his car. This is after the two cars are on either side of the Land Rover. KENNEDY How many passengers did we have in each of these cars? MR. COLLINS Your Honor, that was – that was the focus of the hearing below. And the district court concluded that there was one passenger in the Cadillac and rejected the government's assertion that there were two passengers in each car. So I believe that the – KENNEDY Cadillac is Collins' car. MR. COLLINS That's right, Your Honor. KENNEDY Okay. MR. COLLINS Then after the two cars pull up on either side of the car, where we know that Pass is waiting for the – for the delivery of stolen Treasury checks, the defendant gets out and talks to the driver of the Toyota. Now, taking a step back and viewing this activity from the perspective of an agent who has reason to think that there's more than one source who might show up, it's reasonable to infer that the defendant was involved in the stolen Treasury check transaction. Now, it might not be enough to prove the defendant guilty, but this is  KENNEDY I'm sure. MR. COLLINS They know that there's a transaction taking place. And the only question is whether it's reasonable to infer that this defendant is involved. KENNEDY How much did the district court accept? What findings did it make on where Flores came from? MR. COLLINS Your Honor, I believe that the district court concluded that you could only credit the observations that were in the affidavit, and the affidavit simply does not say where Flores came from. KENNEDY It says Flores got – after the two cars pulled up. MR. COLLINS Yes. KENNEDY It says Flores got into the Land Rover, didn't it? MR. COLLINS That's right, Judge Kennedy. KENNEDY Okay. And it doesn't say where Flores came from? MR. COLLINS It does not say. Now, the government in its brief argues that it's reasonable to infer from the circumstances the fact that the affidavit does say that the two cars pulled up, and that after the two cars pulled up, Flores got into the Land Rover with PASP, and then the defendant was seen next to the Toyota talking to its driver. It's reasonable to infer from those facts that Flores came from one of the two cars.  MR. COLLINS But even if he didn't, you've got Flores inside the Land Rover at a time when the agents know that PASP is going to take delivery of stolen treasury checks. It's also important to note that this was a significant transaction. In the meetings leading up to this final transaction, the informant and Michael PASP had been talking about a transaction in which $2 million in stolen treasury checks would be exchanged for $200,000 in cash. And over the wire, the agents hear Michael PASP, first of all, deliver $140,000 in stolen treasury checks, and second of all, say, my guys are coming with the $400,000. JUSTICE SCALIA Now, how do you tag Collins with all that information? MR. COLLINS Excuse me, Your Honor? JUSTICE SCALIA All this information you're putting out in argument, how do you tie it to Collins? MR. COLLINS Well, it's information that can be imputed to the officer, to the agents who were watching the activity in the parking lot. And so it's – JUSTICE SCALIA Yeah, but what's Collins got to do with it? MR. COLLINS I think it's relevant, Your Honor, because this is what the agents knew when they were watching this activity take place. JUSTICE SCALIA I understand that. MR. COLLINS Yes. JUSTICE SCALIA But they're beating in on Collins. MR. COLLINS Yes. JUSTICE SCALIA And saying we have probable cause, right? MR. COLLINS Yes, Your Honor. JUSTICE SCALIA That's what I'm interested in, is the relationship between Collins and the agents, not just what the agents knew. I want to know what the agents knew that Collins did or said. MR. COLLINS Yes, Your Honor. Keeping in mind that they had reason to think there might be other people involved, keeping in mind the nature of the transaction, the fact there was a lot of money involved, they saw the defendant pull up in a Cadillac on one side of the car in which this truck trafficker was waiting, and then they saw another car pull up and park on the other side of that car. So you have what appears to be a coordinated parking job, and the defendant is involved. JUSTICE SCALIA So the best you can say is that the agents surmised a common enterprise? MR. COLLINS That's exactly right, Your Honor. The inference has to be of concerted  JUSTICE SCALIA So on the basis of an inference, there can be probable cause? MR. COLLINS Your Honor, I think that that's what Pringle teaches. Pringle teaches that given the nature of the suspected criminal activity, if the circumstances suggest, and this is an inference in this case, as Your Honor is focusing on, if the circumstances suggest that there's concerted criminal activity, if you've got reason to think that a person is involved in criminal activity that you are observing, there is probable cause. And the whole question is, is it reasonable to draw that inference here? And the government submits that given this, what appears to be coordinated parking, they don't know for sure, but it appears to be coordinated parking, then the defendant gets out and talks to the driver of the other car. And that conversation is taking place in the parking space next to where PASS is taking delivery of stolen treasures. JUSTICE SCALIA That conversation wasn't tapped or wired. MR. COLLINS It was not, Your Honor. And there's no JUSTICE SCALIA I mean, you know, is there anything in the evidence that tells us about the condition of the parking lot? I mean, were there a lot of empty spaces or was it a busy place? MR. COLLINS No, Your Honor. JUSTICE SCALIA So it could have been a busy parking lot, and the guy in the Cadillac pulls in there. When the other one pulls in, I mean, this happens in parking lots. Sometimes people, you know, struggle to get a spot. And he went in and, you know, goes over to the other car, and for all we know, he could have said, where's a good place to eat? And he said, well, there's Quizno's over there. MR. COLLINS Your Honor, the government can't exclude that possibility. That's true. On the other hand, innocent activity can give rise to probable cause, and the standard is not, isn't a certainty. To get back to your first question, there is nothing in the affidavit explicit about the nature of the parking lot. We know that it's 9 o'clock, and the Court can apply common sense, and it's unlikely that a strip mall parking lot would be packed at 9 p.m. JUSTICE SCALIA No, no, no. MR. COLLINS That's right, Your Honor. JUSTICE SCALIA No, it's not. MR. COLLINS You can imply from the affidavit that because the agent thought that there was something peculiar and significant about these two cars parking on either side of the Land Rover that there weren't other options, but the affidavit does not say, for example, whether there were a bunch of other cars there or not. It simply doesn't. I would like to reserve. JUSTICE ALITO I have one more question. MR. COLLINS Yes, Your Honor. JUSTICE ALITO How do we measure your argument? You're asking us to assume that the district court made an erroneous finding of fact, right? MR. COLLINS No, Your Honor. We're assuming the district court's facts, and we are inferences that give rise to probable cause based upon the facts found by the district court. JUSTICE ALITO You're saying the inferences the district court drew are erroneous. MR. COLLINS We believe that as part of this Court's de novo review, it can consider what a reasonable officer would think given the facts that the district court concluded were made by them. JUSTICE ALITO They're generally fact finders, right? MR. COLLINS Yes, Your Honor. You're not. JUSTICE ALITO Then we don't have any findings supporting your position from the district court. MR. COLLINS Your Honor, I believe the way the district court ruled was the observations made by the officers are those that are set forth in the complaint, because the court viewed the complaint as being contemporaneous. JUSTICE ALITO Do we have to reverse and send it back so that the district court looks at the whole broad situation and all the inferences arising therefrom? Or can we decide in your favor and say the inferences are there? MR. COLLINS Your Honor, I believe that the court can decide in the government's favor. And the other thing that the district court considered was the wire transcript, the transcript of the wire, the wired conversation that the government heard. JUSTICE KENNEDY Testimony was taken, right? MR. COLLINS Yes, it was, Your Honor. JUSTICE KENNEDY Well, it could have been based on her reaction to the testimony of the officers. MR. COLLINS It certainly was, Your Honor. JUSTICE KENNEDY Yeah. MR. COLLINS But the court did create a factual record of what it believed the officers saw. And those are the undisputed facts that are set forth in the complaint affidavit together with what they heard, which is memorializing that transcript. JUSTICE KENNEDY Well, they may have said it, and perhaps she didn't believe it. MR. COLLINS Your Honor, I believe the district court certainly had problems with what some of the agents testified. JUSTICE KENNEDY Well, and in fact, she didn't accept some of their testimony. She said that all the only facts about the parking lot that we're entitled to consider were the ones in the affidavit that... MR. COLLINS That's right, Your Honor. JUSTICE KENNEDY ...appended to the... MR. COLLINS That's right. JUSTICE KENNEDY All right. So we've got those facts. MR. COLLINS Yes. JUSTICE KENNEDY And then do they or do they not amount to probable cause? MR. COLLINS That's right. That's the way the government's framed the appeal. MS. SHAHEEN Good morning, Your Honors. MR. COLLINS Good morning. MS. SHAHEEN Sonia Shaheen on behalf of Wayne Collins. Your Honors, I have to start with an apology, because part of the – in preparing for this argument and also when I reviewed the government's reply brief, I realized that I made a mistake, and that mistake has now been incorporated into the government's report. So let me start by clarifying that. The mistake that I made was not in laying out what the district court's findings were, but in my interpretation or in my summary of what the court's findings were. In fact, when we look at the criminal complaint, there is no finding from the district court that Wayne Collins was even observed to arrive in the Cadillac or that he was observed exiting the Cadillac. There's similarly no finding of fact that Edgardo Flores was observed exiting the gray Toyota Corolla. So in fact, the only facts that this court is entitled to consider are the fact that a white Cadillac arrived, a gray Toyota arrived, and that at some point after that, Wayne Collins was observed standing next to the driver of the gray Toyota Corolla. So much of the government's argument – MR. COLLINS Well, we can – we can also make the observation that the government was aware on the wire that additional people were coming, right? MS. GOTTLIEB That is correct, Your Honor. And my – MR. COLLINS And that there was a meeting scheduled in the parking lot and darned if the cars didn't all show up and darned if a meeting didn't occur, right? MS. GOTTLIEB That is probably true. MR. COLLINS And then Treasury checks wind up in an office across the way, right? MS. GOTTLIEB The Treasury checks were already in the office at the time of the white Cadillac's arrival. Your Honor, what I'm trying to point out is that there is no evidence tying – in the record, there was no credible evidence that Mr. – at the time that the arrest took place, that Mr. Collins was associated with the white Cadillac. So there is no evidence as to the timing of how he arrived at the location or even where he came from. MR. COLLINS So in your view, he was arrested for talking to the guy in the Toyota? MS. GOTTLIEB Absolutely, Your Honor. My position is that although the government argues common enterprise as in Kringle, Kringle is a very different case. You know, he argues concerted effort, joint activity, but Kringle involved three people in an automobile. And that was intrinsic in the Supreme Court's finding was that three people sitting in an automobile may have a joint motive to conceal evidence of a crime or to act in concert. Here we have a very different situation. We have three officers observed entering past this vehicle. We have Gwaine Collins standing talking to the driver of the Toyota and nothing more. And again, as I state, part of that is my error for incorporating – MR. COLLINS Do you think the district court assumed that Collins drove up in the white Cadillac? MS. GOTTLIEB Well, Your Honor, it's – at the hearing, I'm sure that she probably did because I submitted a declaration stating that. But as this Court is well aware, the determination is made as to what the officers knew at the time that the arrest was made. And based on the Court's findings, that the only credible evidence was that what was contained in the complaint, and there was good reason for that. I mean, as the Court is well aware, the evidence presented on the point of whether or not Gwaine Collins was observed exiting the white Cadillac was completely contradictory. We have the – Agent Louie, who was the only one who made any observations that night, testified in the courtroom that he observed Collins exit the vehicle. And he also included that in a declaration submitted – I'm sorry – at the hearing in a declaration submitted in December of 2003, he stated that he did not see Collins exit the vehicle. And then we have a completely contradictory declaration dated October 28th of 2003, where he states that he did see Collins exit the vehicle. So, you know, going back and reviewing the matter, it's no surprise that the Court didn't make any findings in this regard as to whether or not Collins was associated with that vehicle. Again, Your Honors, unless the Court has any questions, I would submit the matter. But it's our position that the district court's factual findings should remain and that there was no particularized suspicion of any criminal activity associated with the defendant. All right. Thank you. Thank you. Your Honors, briefly, the district court did construe the complaint to omit any reference to the defendant driving the white Cadillac. And in the government's opening brief, it tried to take a cautious approach and argue that the court ought to draw the inference that the defendant came on in one of the two cars and that it didn't matter which one for probable cause purposes. It does say in the complaint and this is something the district court didn't focus on, but the complaint actually says at the beginning that the defendant drove a conspirator to a meeting. It just doesn't say which car that the defendant drove. And again, the government would just hasten to add that in its view, it doesn't matter for probable cause purposes. It was reasonable to conclude that he came in one of the two cars. There are cases cited in the government's opening and answering briefs in which courts have drawn inferences of concerted criminal activity based upon circumstances even though the suspect didn't have direct contact with the principles involved in criminal activity. It does depend upon the surrounding circumstances and the government believes those are sufficient here. You say that the affidavit states that the defendant, Collins, drove up and had a co-conspirator in the vehicle with him? On page 2, Your Honor, and this is something that the district court didn't focus on and frankly that the government did not point out in the hearing. But at page, I believe it's GER2. So that statement's contrary to what we've been hearing all along. In which respect, Your Honor? I mean, the affidavit. That there was only one person in the white Cadillac. Your Honor, it was consistent with the position that the government took at the hearing that that. The affidavit says two. Yes. And that was the position taken by the government. The district court rejected  court's findings as she made them. So, but it wasn't inconsistent with the position argued by the government in the district court. The final point is that it was a significant transaction for quite a bit of money. I mean, if you imagine that it was. You rely on the officer's observations. If they had two in the car and there was only one. Your Honor, the agents testified or Agent Louie, I believe, testified that there were. There were two people in the Cadillac. Two people in the Toyota. The district court appeared to rely upon some notes made by another agent. Some months later. Suggesting that there was one in the Cadillac. Three in the Toyota. And I think for that reason, the court rejected the testimony and limited the affidavit. But the court didn't really focus on this statement at the beginning of the affidavit. Saying the defendant drove a conspirator. It's just to point that out. And again, the government maintains it doesn't matter because you could draw the inference that he came in one of the two cars based upon the timing that's laid out in the affidavit. Thank you, Your Honor. All right. The matter will stand submitted. Thank you. Thank you. We come to M2 Software Inc. Versus M2 Communications.
judges: Pregerson, Canby, Beezer